ISADORE H. AND HELEN K. BELLIS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bellis v. Commissioner
Docket No. 21232-90
United States Tax Court
T.C. Memo 1994-28; 1994 Tax Ct. Memo LEXIS 25; 67 T.C.M. (CCH) 2013; January 24, 1994, Filed *25 Decision will be entered for petitioners. For petitioners: Joshua Sarner. For respondent: Lisa Primavera-Femia. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1980 in the amount of $ 17,677 and additional interest under section 6621(c) in the amount of 120 percent of the interest due on the deficiency. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions, the sole issue for decision is whether assessment of the deficiency is barred by the statute of limitations. We hold that it is. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioners are husband and wife and resided in Tamarac, Florida, at the time their petition was filed. Petitioner husband, Isadore Bellis, is an attorney who passed the bar in 1947. He has not practiced law for many years. Petitioners timely filed their joint Federal income tax return for the year ended December 31, 1980. The return *26 was prepared by a representative of Touche Ross & Co. (Touche Ross). On October 7, 1983, respondent sent petitioners a Form 872-A, Special Consent to Extend the Time to Assess Tax, seeking extension of the period of limitations on assessment and collection of petitioners' income tax for 1980. Without the extension the period was due to expire on April 15, 1984. Respondent received no reply and, consequently, mailed another Form 872-A to petitioners on November 10, 1983. On November 14, 1983, petitioners executed the Form 872-A and authorized the representative at Touche Ross who was in charge of their account, Howard E. Needleman, C.P.A. (Needleman), to return the signed Form 872-A to respondent with a cover letter (the Needleman letter or the letter). In the letter, Needleman notified respondent that petitioners "would like this consent to be restricted to a period not to exceed December 31, 1984. Please advise accordingly." Petitioners authorized and approved the contents of the letter. Respondent received the Needleman letter and the Form 872-A on November 17, 1983, and placed them in respondent's administrative file for the petitioners' 1980 tax year. Respondent did not *27 have any documents from petitioners granting power of attorney to Needleman. After receiving the Form 872-A and the Needleman letter, respondent sent petitioners two copies of a Form 872 (the Form 872) with an ending date of June 30, 1985, and a cover letter dated December 2, 1983. The cover letter was signed by Revenue Agent Jean Cole and stated in pertinent part: Dear Mr. & Mrs. Bellis: You have recently requested a change to the form 872-A or 872, Special Consent to Extend the Time to Assess Tax, previously mailed to you. Enclosed is a new form 872 or 872-A * * * with an ending date of June 30, 1985. Please note that due to the volume of cases being handled by this office, we are unable to allow a shorter extension date.
Petitioners received the December 2, 1983, letter and the Form 872 and, after discussing the June 30, 1985, date with Needleman, executed the Form 872. Petitioners mailed the Form 872 to the Internal Revenue Service, but no copy of it, executed or unexecuted, is in respondent's administrative file for petitioners. On January 26, 1984, Revenue Agent Barbara Phillips executed on behalf of respondent the Form 872-A that had been enclosed with the Needleman *28 letter. Respondent mailed a form cover letter and a copy of the fully executed Form 872-A to petitioners on February 3, 1984. Both the cover letter and the Form 872-A contained various provisions regarding termination of the consent agreement, but neither document mentioned either the December 31, 1984, or the June 30, 1985, ending dates. In addition, neither document mentioned the Form 872 that had been mailed to petitioners. Upon receipt and review of that correspondence, petitioners believed that respondent had accepted the Form 872-A as restricted by the Needleman letter to the December 31, 1984, ending date. Petitioners spoke with Needleman who agreed with them, but neither petitioners nor Needleman called respondent to confirm that the parties were in agreement on this point. On June 20, 1990, respondent issued a notice of deficiency to petitioners. OPINION Generally, respondent has 3 years from the date a return is filed to assess a tax liability for that year. Sec. 6501(a). Petitioners timely filed their Federal income tax return for 1980. Respondent mailed the notice of deficiency to them on June 20, 1990, well after the 3-year period of limitations on assessment *29 and collection prescribed by section 6501(a) expired on April 15, 1984. Thus, petitioners have made a prima facie showing that assessment of the deficiency is barred by the period of limitations. Respondent bears the burden of going forward with evidence to show that the bar of the statute is not applicable. Adler v. Commissioner, 85 T.C. 535, 540 (1985). Respondent may discharge this burden by showing that the parties executed a written consent, valid on its face, extending the period of limitation for assessment, and that the notice of deficiency was mailed prior to the expiration of the extended period. Id. Pursuant to section 6501(c)(4), the taxpayer and respondent may consent in writing to extend the 3-year period of limitations. If respondent introduces an apparently valid consent and the taxpayer asserts that such consent is ineffective, the taxpayer again has the burden of going forward to affirmatively show the invalidity of the written consent. Concrete Engineering Co. v. Commissioner, 19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). Given that the notice of deficiency *30 was issued well after the possible ending dates of April 15, 1984, December 31, 1984, or June 30, 1985, assessment and collection of a deficiency for 1980 are barred by section 6501(a) unless the Form 872-A executed by petitioners and respondent is a valid, indefinite extension of the statute of limitations. It is petitioners' position that the Needleman letter effectively restricted the extension date of the Form 872-A. Respondent contends that the Court may look only to the four corners of the Form 872-A to determine the scope of the agreement. A consent to extend the period of limitations on assessment and collection is not a contract, but a unilateral waiver of the taxpayer's defense on such ground. Roszkos v. Commissioner, 87 T.C. 1255, 1261 (1986), vacated and remanded on other grounds 850 F.2d 514 (9th Cir. 1988); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983). Nevertheless, section 6501(c)(4) requires that the parties reach a written "agreement" regarding the extension and gives the parties freedom to decide the terms governing the extension. Pursell v. Commissioner, 38 T.C. 263, 278 (1962), *31 affd. per curiam 315 F.2d 629 (3d Cir. 1963). Accordingly, contract principles are significant in reviewing a written agreement to extend the period for assessment. Roszkos v. Commissioner, supra at 1261; Piarulle v. Commissioner, supra at 1042. Several cases involving this issue have stated the basic proposition that it is the objective manifestation of mutual assent as evidenced by the parties' overt acts, not their secret intentions, that determines whether the parties have made an agreement. Kronish v. Commissioner, 90 T.C. 684, 693 (1988); Tallal v. Commissioner, 77 T.C. 1291, 1294 (1981), affd. 778 F.2d 275 (5th Cir. 1985). In cases where taxpayers executed consents in the belief that they were conditional, but failed to reduce their understanding to a writing associated with the consents, we have found the consents to be valid and unrestricted. See Kronish v. Commissioner, supra; Tallal v. Commissioner, supra.In cases *32 where we have granted relief from consents that appeared valid or unrestricted on their face, we have looked to the documents that were forwarded by the taxpayers with the consents. See Windfall Grain Co. v. Commissioner, 23 B.T.A. 725 (1931); Smith v. Commissioner, T.C. Memo. 1989-87. We have considered the effect of cover letters accompanying consent forms in several cases. See, e.g., Aronson v. Commissioner, T.C. Memo. 1991-539, affd. 989 F.2d 105 (2d Cir. 1993); Smith v. Commissioner, supra; Scheuerman v. Commissioner, T.C. Memo. 1984-160. To effectively condition a consent, a letter must in some way contrast with or alter the language of some provision of the Form 872-A. Aronson v. Commissioner, supra; Scheuerman v. Commissioner, supra.In the instant case the Needleman letter contained the sentence: "We would like this consent to be restricted to a period not to exceed December 31, 1984." Respondent argues that this language *33 is precatory and does not evince a clear, unambiguous intent. We disagree. In December 1983, respondent found the above-quoted statement in the Needleman letter to be a sufficiently clear alteration of the express terms of the Form 872-A to merit sending petitioners a letter acknowledging their requested restriction and a Form 872 with a June 30, 1985, ending date. While it is true that petitioners' intent could have been expressed in more demanding language, the terms Needleman chose are not ambiguous merely because they are polite. Petitioners did not intend to agree to an unlimited waiver of the statute of limitations and that intention was reduced to a writing that was received by respondent. We find the quoted language to be a clear restriction on and alteration of the terms of the Form 872-A and, consequently, find that the Needleman letter became part of the agreement to extend the assessment period. Respondent also contends that even if the Needleman letter is found to be an unambiguous expression of petitioners' intent, the letter can have no legal effect because Needleman did not have a power of attorney authorizing him to represent the taxpayers in dealings with respondent. *34 [1] Petitioners signed the Form 872-A themselves, but did not sign the Needleman letter. We assume that respondent is relying on the theory that the Form 872-A as restricted by the Needleman letter, is invalid because it does not strictly comply with section 601.502(c)(1)(iii), Statement of Procedural Rules, which provides in relevant part: (c) Requirement of a power of attorney or a tax information authorization -- (1) Requirement of power of attorney. Except as otherwise provided * * * a power of attorney in proper form, or a copy thereof * * * will be required in a matter by the Revenue Service when the taxpayer's representative desires to perform one or more of the following acts on behalf of the taxpayer: -- * * * (iii) Execution of a consent to extend the statutory period for assessment or collection of a tax.
*35 We find this argument unconvincing. Although respondent apparently knew that there was no power of attorney on file for Needleman, respondent did not inform petitioners that their consent was inoperative. Rather, in responding to the restriction stated in the Needleman letter, respondent simply treated the letter as if it had been written by petitioners, stating "You have recently requested a change to the form 872-A". Procedures relating to powers of attorney are directory, rather than mandatory in legal effect. Cataldo v. Commissioner, 60 T.C. 522, 523 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974). In our view, the acceptance by respondent of the Needleman letter constitutes a waiver by respondent of one of her own requirements designed to improve administrative procedures. Given that the Needleman letter was part of the agreement, we must next consider the effect of respondent's execution of the Form 872-A without the restriction contained in the Needleman letter. It is petitioners' position that respondent's execution of the document without the date restriction stated in the Needleman letter constituted *36 the acceptance of a consent that was very different from that proposed by petitioners. It is a basic premise of contract law that no valid contract exists when one party executes a document that is subsequently materially altered and then executed by the other party without the consent of the first party. 15 Williston, Contracts, sec. 1913 (3d ed. 1972). In Cary v. Commissioner, 48 T.C. 754 (1967), we held that the unilateral alteration of a consent form by the Commissioner without the taxpayer's consent operated to invalidate the taxpayer's agreement to extend the period for assessment. In Scheuerman v. Commissioner, T.C. Memo. 1984-160, taxpayers sent a cover letter with their signed Form 872-A and then later contended that their consent was invalid because respondent physically separated the cover letter from the consent. The taxpayers' argument was that respondent had unilaterally altered the consent form without the agreement of the taxpayers. In reviewing the taxpayers' cover letter we held that it did not constitute a statement of conditions to the consent and there was nothing in it which conflicted with the *37 terms of the consent. Accordingly, we held that the act of removing the letter from the consent did not alter it. The implication of our opinion in Scheuerman is that the result would have been different if, as in the case at bar, the cover letter contained a restriction on the consent. In the instant case, respondent initially acknowledged the restriction contained in the Needleman letter, but subsequently executed the Form 872-A without regard to the letter. Respondent never removed the Needleman letter from petitioners' administrative file. It appears that the revenue agent who executed the Form 872-A either did not see the letter in the file or chose to ignore it. In either instance, the effect was that of separating documents that together formed the agreement to which petitioners had consented, thereby altering the terms of the agreement. No notice of the revised terms of the agreement was given to petitioners other than the sending of a copy of the executed consent to petitioners. In light of the Needleman letter, such notice cannot be considered the equivalent of obtaining petitioners' consent to an indefinite extension of the limitations period. On January 26, *38 1984, the date the revenue agent executed the Form 872-A, respondent still had almost 3 months before the expiration of the period of limitations to take any one of several actions that would have given petitioners notice of, and a chance to decide whether to accept, an unlimited waiver. We hold that the Form 872-A does not operate to extend the period of assessment for 1980 so as to render the deficiency notice timely. Respondent argues that equitable estoppel should prevent petitioners from claiming the bar of the statute of limitations. We discussed application of the doctrine of equitable estoppel in similar circumstances in Piarulle v. Commissioner, 80 T.C. 1035, 1044 (1983), and specified the elements that must be shown as follows: A taxpayer may be estopped to deny the validity of an agreement to extend the period of limitations where the Government reasonably relies upon waivers executed by the taxpayer. The circumstances required for equitable estoppel to apply are: (1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) *39 the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. [Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971).] [Citation omitted.]
Respondent contends that petitioners' actions constitute wrongful, misleading silence. On brief, respondent argues that petitioners "should have known" that respondent considered the Form 872-A to be unlimited and that "The Service had no way of knowing that petitioners harbored a secret, uncommunicated intention with respect to the fully executed Form 872-A." On the contrary, the Needleman letter made clear petitioners' intention to limit the Form 872-A. Furthermore, respondent is relying on an agreement which was revised by her employees without the consent of petitioners when sufficient time remained to negotiate an ending date that would be suitable to both parties. In addition, petitioners had no way of knowing that the Form 872 they had executed the previous month had not been received by respondent. Given respondent's previous actions, petitioners had no *40 reason to think that respondent intended to hold them to an unlimited consent. Under these circumstances it can hardly be said that respondent was misled by petitioners so as to raise an estoppel against them. Decision will be entered for petitioners.
Footnotes
1. Respondent has brought to our attention the unpublished Court of Appeals of the Ninth Circuit opinion in Eckersley v. United States, 66 AFTR 2d 90-5677, 90-2 USTC par. 50,535 (N.D. Cal. 1990), affd. without published opinion 961 F.2d 216 (9th Cir. 1992). We do not believe the Eckersley case merits discussion here as, according to Ninth Circuit rule 36-3↩, the opinion has no precedential value and, in any event, the facts are distinguishable from the case at bar.