T.C. Memo. 2008-247

UNITED STATES TAX COURT

KEVIN M. BAKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1051-05.                    Filed October 30, 2008.

<u>Michael C. Whelan</u>, for petitioner.

<u>Thomas D. Yang</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  Kevin Baker did not file his 2002 tax return on time.  The Commissioner prepared a "substitute for return" using the information he had to determine how much tax Baker owed.  Baker then belatedly submitted a return that reported much more income, but also much higher deductions than the Commissioner had known about.  We have to sort through various

procedural problems to figure out what, if any, deficiency in Baker's 2002 income tax remains.

## Background

Baker has an entrepreneurial spirit, and he earned income from numerous ventures in 2002. His largest single source of income was the wages he earned as president of Blue World Technologies. He also earned income from his investments in two passthrough entities:[1] He was a 45-percent shareholder in Blue World and a member of Guardian Enterprises, LLC. To those sources he added a small amount of interest income and some miscellaneous income. But despite his success, Baker failed to file an individual tax return for 2002.

The Commissioner was not totally ignorant about Baker's earnings because Blue World had reported the $165,038 in wages that it had paid Baker. The Commissioner also knew about $157 of interest income. When the Commissioner learns--usually from third parties with an obligation to report it--that someone has received income but not filed a return, section 6020(b)[2] gives

---

[1] A passthrough entity pays no tax on income at the corporate level; instead, profits and losses "pass through" the entity to the members, who pay individual income tax. The most common types are partnerships, S corporations, and limited liability companies.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code for the year at issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

him the power to prepare a "substitute for return" (SFR). An SFR is not a comprehensive return; the Commissioner uses only one of two filing statuses--single or married filing separately--and he allows only one personal exemption and no business expenses or personal deductions. See 2 Administration, Internal Revenue Manual (CCH), pt. 5.19.2.6.4.5 (10), at 18, 322.

The Commissioner used Baker's $165,195 in wages and interest income to prepare the SFR. The Commissioner picked the married-filing-separately filing status and allowed only the corresponding standard deduction. See sec. 63(c)(2). After subtracting the standard deduction from Baker's income, the Commissioner calculated that Baker owed a deficiency of $47,629. The Commissioner credited Baker for the taxes that Blue World had withheld. He then determined additions to tax for Baker's failure to timely file and timely pay. See secs. 6651(a)(1), 6651(a)(2).

The Commissioner notified Baker of all this by sending him a notice of deficiency with the SFR attached. Because an SFR is usually stingy with deductions, a taxpayer who gets one often responds by filing a petition with us and then preparing a return reflecting the much more complete information he has about himself--especially about greater deductions, the willingness of his wife to accept married-filing-jointly status, and whether he has children or other dependents. Baker's case started

normally--he filed a petition with us, and it seemed headed toward a contest over whether the Commissioner's SFR included too much income or too few deductions or chose a less-favorable filing status.  But this case left the road most traveled when Baker submitted his own 2002 tax return.  What made this return unusual was that it greatly increased Baker's reported income.  Instead of the $165,195 that the Commissioner knew about and had included on the SFR, Baker's own return reported over $575,000, because Baker reported passthrough income from Blue World and Guardian as well as miscellaneous and interest income.

But with the increase in income, Baker also reported such large deductions that he claimed a refund.  The Commissioner has accepted some of these, but a number are still at issue.

| Disputed Deduction | Amount |
|---|---|
| Short-term capital loss carryover | $138,939 |
| Long-term capital loss carryover | 28,191 |
| Blue World loss | 136,423 |
| Blue World at-risk-loss carryover | 199,105 |
| Guardian Enterprises loss | 20,686 |
| Blue World charitable contributions carryover | 27,294 |
| Blue World charitable contribution | 450 |

Though Baker submitted his 2002 return before the Commissioner filed his answer, the Commissioner neither asserted an increased deficiency in his answer nor filed an amended answer.  The

Commissioner's pretrial memorandum also stated that only the original $47,629 deficiency was at issue.

Baker was an Illinoisan when he filed his petition, and the case was tried in Chicago. The trial largely consisted of the proffering of unaudited corporate tax returns from Baker's passthrough businesses, their accompanying K-1s, and Baker's own old 1040s with a litany of assertions of their accuracy. Baker's accountant added his own assertions of the accuracy of many of these documents, even though one of his colleagues had actually prepared them.

## Discussion

We start with the threshold question: How much is at issue? The Commissioner sent Baker a notice of deficiency based solely on the SFR. But Baker reported substantially more income on his 2002 tax return. We have jurisdiction to increase the amount of the deficiency "if claim therefor is asserted by the Secretary at or before the hearing or a rehearing." Sec. 6214(a).

To assert an increased deficiency, the Commissioner must formally plead a claim for an increase in either the answer or an amended answer. Estate of Petschek v. Commissioner, 81 T.C. 260, 271-72 (1983), affd. 738 F.2d 67 (2d Cir. 1984); Koufman v. Commissioner, 69 T.C. 473, 475-76 (1977). Even if the parties stipulate an increase in income the Commissioner is required to formally plead an increase in the deficiency. Tool Producers,

Inc. v. Commissioner, T.C. Memo. 1995-407, affd. 97 F.3d 1452 (6th Cir. 1996). This, the Commissioner did not do.[3] And the Commissioner did not amend his answer, either.

Even if we peek outside the pleadings, we can find no assertion of an increased deficiency. The Commissioner's pretrial memorandum and amended pretrial memorandum both list $47,629 as the amount in dispute, and he sticks to that number in his posttrial brief. The only time the Commissioner refers to Baker's increases in income is in the "Respondent's Request for Finding of Fact" section of his posttrial brief. The reference is a list that begins: "Petitioner also included in his 2002 income tax return income items which were not set forth in the notice of deficiency; these income items are conceded by Petitioner and are as follows." The Commissioner then lists the increases. But this list is not an amended answer and is therefore not a claim for an increased deficiency. Thus, we hold that only the $47,692 deficiency is at issue, and the burden is on Baker to prove that it is erroneous. See Rule 142(a).

---

[3] The Commissioner's pretrial memorandum shows a smaller addition to tax than that shown on the notice of deficiency. The reason is that he conceded that Baker is not liable for the section 6651(a)(2) addition to tax for failure to timely pay. Therefore, under section 6651(c)(1), the rate used to determine the section 6651(a)(1) addition will be increased.

Baker's defense to the deficiency is that he had sufficient deductions in 2002 to offset nearly all of his income. A significant obstacle to his success is that he chooses to argue that it is the Commissioner's burden to disprove his entitlement to these deductions. He argues that his deductions are new matters because the Commissioner did not deny them in the notice of deficiency. Baker is not the first taxpayer to try this. See Widemon v. Commissioner, T.C. Memo. 2004-162. In Widemon, we decided that the burden remained with the taxpayer because his deductions were a new theory and not a new matter. Id. And in Rappaport v. Commissioner, T.C. Memo. 2006-87, just as in this case, a taxpayer filed a tax return claiming extra income and large deductions after the Commissioner had already sent a notice of deficiency. We held in Rappaport that, because the taxpayer himself had raised the matter of the new deductions, we would not shift the burden of proof onto the Commissioner to disprove them. Id.

Widemon and Rappaport remain good law, and the distinction that they draw would enable us to quickly reject Baker's claim, but we can dismiss his argument even without them. In this case, the Commissioner determined a deficiency based on Baker's unreported wage and interest income. Baker then petitioned us to redetermine the deficiency, alleging that he was not liable for the deficiency because the "Notice of Deficiency may not have

given him credit for * * * business deductions or other items affecting taxable income." He never alleged that the income was not his or not taxable. Therefore, the issue of whether he is entitled to his claimed deductions is not a new matter, but it is the original and only matter he has asked us to decide.

Now that these procedural obstacles are settled into place, and we have the burden of proof worked out, we can determine the correct amount of the deficiency. We begin by determining Baker's 2002 income. This step is easy because Baker reported his income on a signed tax return. We treat his tax return as an admission to all the reported income. See Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975). Therefore, we find that Baker earned $578,997 in 2002.

Our next step is to determine if Baker substantiated any of the deductions he claimed on his 2002 tax return. We can make this determination easier by dividing his deductions into two classes: Those that Baker tried to substantiate with old tax returns and those that he tried to substantiate with more persuasive documentation.

We start with those deductions supported with nothing more than old tax returns--a class which includes all the deductions at issue except for Baker's short-term capital-loss carryover. We finish our consideration by citing our long series of

precedents in which we have held that a taxpayer's returns do not substantiate deductions or losses because they are nothing more than a statement of his claims.  <u>Wilkinson v. Commissioner</u>, 71 T.C. 633, 639 (1979); <u>Roberts v. Commissioner</u>, 62 T.C. 834, 837 (1974).  To hold otherwise would undermine our presumption that the Commissioner's determination is correct.  See Rule 142; <u>Halle v. Commissioner</u>, 7 T.C. 245, 247 (1946), affd. 175 F.2d 500 (2d Cir. 1949).  For the same reason, we long ago established that under circumstances like these, a taxpayer can't undermine the rule that old returns are not substantiation of deductions or losses by adding to them the bare testimony that those old returns are correct, without records or credible testimony about the individual items on the returns.  See <u>id.</u> at 250.  And a taxpayer also can't successfully substantiate his old returns by arguing that the Commissioner is somehow estopped from challenging his deductions because the Commissioner failed to challenge the same or similar deductions in earlier years.  <u>Lerch v. Commissioner</u>, 877 F.2d 624, 627 n.6 (7th Cir. 1989), affg. T.C. Memo. 1987-295; <u>Pekar v. Commissioner</u>, 113 T.C. 158, 166 (1999).

Much the same rules apply to the K-1s that Baker offered to substantiate the deductions from his passthrough businesses; they, too, are only statements of his claims, not proof of them. <u>LeBouef v. Commissioner</u>, T.C. Memo. 2001-261.  Baker's LLC,

Guardian Enterprises, had only two members in 2002, so the Commissioner classified it as a partnership under the Code in the absence of the firm's election to be treated as a corporation. Sec. 301.7701-3(b)(1)(i), Proced. & Admin. Regs. The Code's default rule for small partnerships, section 6231(a)(1)(B)(i), also applies to Guardian, so the Commissioner was allowed to audit Guardian at the individual partner level. And this means, under precedents like LeBouef, that Baker had to prove the accuracy of the items on the K-1 that he got from Guardian--he couldn't just rely on them in the absence of a partnership-level audit as partners in some larger partnerships might be able to do.

Taxpayers do have a duty to report the losses and deductions from S corporations consistently with their corporation's return. Sec. 6037(c). But since 1996, individual S corporation shareholders have been answerable for all the issues on their corporation's returns. See Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1307(c)(1), 110 Stat. 1781 (repealing unified audit procedures for S corporations). Baker has given us no reason for not applying our holding in LeBouef to his S-corporation K-1s, as we do to his LLC K-1, and he introduced nothing but those bare K-1s in proof of his deductions and losses.

What a taxpayer needs to substantiate his deductions and losses are records sufficient to permit verification of a deduction or loss. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. By offering only old tax returns and K-1s, with nonspecific testimony of their accuracy, Baker has failed to substantiate almost all his claimed deductions.

The one exception is his deduction for a short-term capital-loss carryover. For this, he had 1099s dating back to 1996. We find this to be persuasive that he had realized a loss back in 1996. Baker's problem is that their use to prove a deduction in 2002 requires that he prove his capital gains and losses from 1996-2002 to show the 1996 loss hadn't been used up. Burns v. Commissioner, T.C. Memo. 1997-83; Williams v. Commissioner, T.C. Memo. 1991-317, affd. without published opinion 996 F.2d 1230 (9th Cir. 1993). See sec. 1.1212-1(b), Income Tax Regs. Baker offers only tax returns for the intervening years, so we find that he also failed to substantiate the short-term capital loss that he wanted to carry into 2002.

In conclusion, we find that Baker admitted to $578,997 in income by reporting the income on his 2002 tax return. The only defense he offered was that in 2002 he had enough deductions to offset most of this income. We find that he failed to substantiate any of those in dispute. But only the $47,692 deficiency is at issue, and the Commissioner has conceded many of

Baker's other deductions.  Therefore (though unlikely given the size of his income compared to the concessions we know about), Baker's liability may be reduced.

The last issue is whether Baker is liable for an addition to tax under section 6651(a)(1) for a failure to timely file his tax return.  The Commissioner has the burden of production.  Sec. 7491(c).  He met his burden because Baker conceded that he filed his 2002 tax return late and offers no explanation for his tardiness.

Because computations may be needed,

<u>Decision will be entered</u>

<u>under Rule 155</u>.